# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**ANDERSON MANGHAM, as surviving spouse of Carolyn Robinson Mangham, deceased, and as proposed administrator of the Estate of Carolyn Robinson Mangham,**

**Plaintiff,**

**v.**

**WESTIN HOTEL MANAGEMENT, LP, and SLC ATLANTA, LLC,**

**Defendants.**

**1:16-cv-3725-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendants Westin Hotel Management, LP's ("Westin") and SLC Atlanta, LLC's ("SLC") (together, "Defendants") Motion for Summary Judgment [29], Plaintiff Anderson Mangham's ("Plaintiff") Motion to Strike the Affidavit of Michael Hsiang [31] ("Motion to Strike"), Plaintiff's Motion for Oral Argument on its Motion to Strike the Affidavit of Michael Hsiang [34], Plaintiff's Motion for Leave to File Certain Documents Designated Confidential by Defendants Under Seal [39] ("Motion to

Seal"), Plaintiff's Motion for Partial Summary Judgment [41], and Plaintiff's

Motion for Oral Argument on its Motion for Partial Summary Judgment [42].

## I.  BACKGROUND

### A.  Facts

On March 22, 2016, Plaintiff's wife, Carolyn Robinson Mangham

("Mrs. Mangham"), "was found dead and partially frozen in a walk-in freezer" at

the Westin Peachtree Plaza Hotel (the "Hotel") where she worked.  (Defendants'

Statement of Undisputed Material Facts [29.6] ("DSMF") ¶ 1; [29.1] at 11).

Mrs. Mangham "enter[ed] the freezer alone during her normal evening shift" and

"was found [the next morning] in a collapsed position inside the freezer."  ([29.11]

at 11).  Mrs. Mangham was employed by Starwood Hotels & Resorts Worldwide,

Inc. ("Starwood") at the time of her death.  (DSMF ¶¶ 1-2).

Starwood owns and controls Defendant SLC, which owns the Hotel and the

fixtures inside the Hotel.  (DSMF ¶¶ 3, 6).  "SLC operates the Hotel through the

employees of its parent company, [Starwood]," and "does not have any employees

other than the employees of [Starwood]."  (DSMF ¶¶ 4-5).  All of SLC's officers

and directors are employees of Starwood.  (DSMF ¶ 7).  All Hotel employees are

Starwood employees.  (DSMF ¶ 8).  In March 2016, "all personnel, payroll[,]

accounting[,] [managerial, and administrative] functions relative to SLC and the

operation of the Hotel were performed by [Starwood] personnel." (DSMF ¶¶ 9-10). SLC does not have offices separate from [Starwood] offices. (DSMF ¶ 11). "[Starwood] can unilaterally make the decision to sell the Hotel and fixtures at the Hotel, including the subject freezer." (DSMF ¶ 12). Starwood receives the proceeds of any sale of the Hotel's fixtures. (DSMF ¶ 13).

Defendant Westin also is a wholly-owned subsidiary of Starwood. (DSMF ¶ 15). It has "nothing to do with the Hotel," and "does not own, operate, maintain or otherwise control the Hotel or the fixtures therein." (DSMF ¶¶ 14-15).

B.      Procedural History

On September 1, 2016, Plaintiff's Complaint [1.2] was filed in the State Court of Fulton County, alleging that Mrs. Mangham died in the Hotel freezer because "the door release mechanism failed to function properly, causing [her] to become trapped in the freezer." (Compl. ¶¶ 13-15). The Complaint asserts claims for "negligence – premises liability" (Count 1) and wrongful death (Count 2).

On October 5, 2016, Defendants filed their Notice of Removal [1]. On October 20, 2016, and November 4, 2016, Defendants filed amended notices of removal to cure jurisdictional defects in their removal notice. ([5], [7]). On May 1, 2017, Defendants filed their Motion for Summary Judgment on the grounds that (1) Plaintiff's claims against SLC are barred by Georgia's Workers' Compensation

Act, and (2) Westin "owed no duty to [Mrs. Mangham] since it had absolutely nothing to do with the Hotel." ([29] at 3). On May 23, 2017, Plaintiff moved to strike the affidavit of Michael Hsiang, which Defendants submitted in support of their summary judgment motion. ([31]). On June 13, 2017, more than three weeks after the due date, Plaintiff filed his Response to Defendants' Statement of Undisputed Material Facts and Statement of Additional Facts. ([37]). Plaintiff did not file a memorandum in opposition to Defendants' Motion for Summary Judgment. On October 10, 2017, more than five months after the deadline for filing summary judgment motions in this case, Plaintiff filed his Motion for Partial Summary Judgment and his Motion for Oral Argument on the Motion for Partial Summary Judgment. (See [24] (requiring summary judgment motions to be filed on or before May 1, 2017)). Plaintiff's partial summary judgment motion argues that his claims are not barred by Georgia's Workers' Compensation Act.

## II.    PLAINTIFF'S MOTION TO STRIKE

"When ruling on summary judgment, the Court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits submitted by the parties." Tishcon Corp. v. Soundview Communciations, Inc., No. 1:04-CV-524-JEC, 2005 WL 6038743, at *3 (N.D. Ga. Feb. 15, 2005) (citing Fed. R. Civ. P. 56(c)). "An affidavit or declaration used to support or oppose a

motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

On May 1, 2017, the Hotel's Director of Finance, Michael Hsiang, executed and notarized his three-page affidavit, offering testimony about the ownership and operation of the Hotel. On May 1, 2017, Defendants submitted Mr. Hsiang's affidavit in support of their summary judgment motion. On May 23, 2017, one day after his summary judgment response was due, Plaintiff moved to strike Mr. Hsiang's affidavit on the grounds that "1) Hsiang did not signal his understanding that the statements were made under penalty of perjury; 2) the Affidavit contains generalized, conclusory statements that are outside of the scope of Hsiang's personal knowledge and competency; and 3) portions of the Affidavit are inconsistent with Hsiang's prior deposition testimony." ([31] at 1-2).

Plaintiff's Motion to Strike was filed after his response to Defendants' summary judgment motion was due, and Plaintiff did not request the Court to allow the motion to be filed after the response deadline. For this reason alone, Plaintiff's Motion to Strike should not be considered. Even if it was considered, Plaintiff did not show that Mr. Hsiang's affidavit should be struck. First, because Mr. Hsiang's statements in his affidavit were "subscribed and sworn to before" a

notary public, he was not required to certify that the statements were made under penalty of perjury. ([29.2] at 3); see Tishcon Corp., 2005 WL 6038743, at *3 ("An affidavit is a voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public."). Only "unsworn declarations[s]" must be "subscribed by [the declarant] as true under penalty of perjury." 28 U.S.C. § 1746.[1]

Second, Plaintiff did not show that Mr. Hsiang's statements are outside his knowledge or competency. Mr. Hsiang has been the Hotel's Director of Finance for approximately twelve years, and was designated, during discovery, as Defendants' Federal Rule of Civil Procedure 30(b)(6) representative. ([36] at 3, 7). Mr. Hsiang expressly stated in his affidavit that, in his capacity as the Hotel's finance director, he has "knowledge of all the facts in this affidavit, and [that] all the facts stated herein are true and correct to the best of [his] knowledge." ([29.] ¶ 1).

---

[1] "Pursuant to 28 U.S.C. § 1746, for purposes of summary judgment, an unsworn declaration may be given the same force and effect as an affidavit if it is signed and dated and includes language in substantially the following form, 'I declare (or certify, verify, or state) under penalty of perjury . . . that the foregoing is true and correct. Executed on (date). (Signature).'" Tishcon Corp., 2005 WL 6038743, at *3 (quoting 28 U.S.C. § 1746).

Third, Plaintiff identifies only three sentences in Mr. Hsiang's affidavit that he claims are required to be struck as impermissibly "general[]" or "conclusory." ([31] at 2).  Plaintiff first challenges paragraph 4 of Mr. Hsiang's affidavit, which states that "[Starwood] formed SLC for the purpose of entering into a land lease with the State of Georgia for the land where the [Hotel] sits."  ([29.2] ¶ 4). Plaintiff argues this statement should be struck on the grounds that SLC was formed several years after the land lease was executed in 1972.  ([31] at 4-5).  The record is clear, however, that SLC is the successor in interest to the corporate entity that entered into the land lease with Georgia.  ([36] at 9; [37] at 5). Mr. Hsiang's statement is not inaccurate in light of this fact and, even if it was, the statement is not material to Defendants' summary judgment motion.

Plaintiff also challenges paragraph 5 of Mr. Hsiang's affidavit, which states that "SLC has no employees, other than employees of [Starwood], and SLC was, at all relative times, under the exclusive control of [Starwood]."  ([29.2] at ¶ 5). Plaintiff claims this statement should be struck because the phrase "at all relative times" is unclear and the phrase "exclusive control" calls for a legal conclusion. ([31] at 5).  The word "relative" appears to be a typographical error and Mr. Hsiang likely intended to use the word "relevant" instead.  Even if he did not, Mr. Hsiang's assertion that SLC was under the "exclusive control" of Starwood

clearly applies to March 22, 2016, the date on which Mrs. Mangham died and the only date relevant to this lawsuit. Plaintiff's assertion that SLC was under the "exclusive control" of Starwood also is a permissible statement of fact, not a legal conclusion that must be ignored at the summary judgment stage. See Heaton v. Home Transp. Co., 659 F. Supp. 27, 30, 33 (N.D. Ga. 1986) (accepting as true, at the summary judgment stage of a workers' compensation case, an affiant's assertion that one entity "was under the exclusive control" of another entity).

Plaintiff also claims that paragraph 8 of Mr. Hsiang's affidavit constitutes "inadmissible hearsay" because it "fails to provide adequate detail about which 'managerial and administrative functions relative to SLC and the operation of the Hotel were performed by [Starwood] personnel." ([31] (quoting paragraph 8 of Mr. Hsiang's affidavit)). Mr. Hsiang explicitly testified, however, that "all" managerial and administrative functions were performed by Starwood personnel. ([29.2] ¶ 8). Even if he had not, Plaintiff fails to offer any explanation or citation to authority for his conclusory assertion that Mr. Hsiang's statement constitutes "inadmissible hearsay." Plaintiff has not shown that Mr. Hsiang's affidavit, including the only three sentences he specifically challenges, should be struck as impermissibly "general[]" or "conclusory." ([31] at 2).

Finally, Plaintiff identifies a single sentence in Mr. Hsiang's affidavit that he claims is contradicted by Mr. Hsiang's deposition testimony. That sentence, in paragraph 3 of Mr. Hsiang's affidavit, states: "[Westin] does not own, operate, maintain or otherwise control the Hotel or fixtures therein." ([29.2] ¶ 3).[2] The Court has reviewed Mr. Hsiang's deposition testimony and finds that it is consistent with paragraph 3 of his affidavit. Mr. Hsiang testified at his deposition that Westin "never operated the [Hotel]," never "owned equipment that is located at the [Hotel]," and never "conducted business in any form at the [Hotel]." ([31.3] at 8). Mr. Hsiang further testified that "there is no relationship between the hotel and Westin Hotel Management, LP," that Westin "do[es] not own [the Hotel] fixtures or the [Hotel] building," that Westin never "paid for anything in the . . . hotel related to ownership or maintenance of the building or fixtures," and that Westin "operates *other* hotels . . . as an operating management company." ([31.3] at 4, 8, 22, 23; see also [31.3] at 19). Plaintiff has not identified any material statements in the affidavit that are directly contradicted by Mr. Hsiang's deposition testimony. Plaintiff's Motion to Strike is denied.[3]

---

[2]      Plaintiff did not dispute this assertion in his untimely response to Defendants' Statement of Undisputed Material Facts. (See [37] at 16).

[3]      Plaintiff's Motion for Oral Argument on its Motion to Strike the Affidavit of Michael Hsiang [34] is denied because Plaintiff "has not adequately indicated how

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

"Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ahmed v. Air France-KLM, 165 F. Supp. 3d 1302, 1309 (N.D. Ga. 2016); see Fed. R. Civ. P. 56. "An issue of fact is material if it 'might affect the outcome of the suit under the governing law.'" W. Grp. Nurseries, Inc. v. Ergas, 167 F.3d 1354, 1360 (11th Cir. 1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. at 1361 (quoting Anderson, 477 U.S. at 248).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying [materials] which it believes demonstrate the absence of a genuine issue of material fact."

---

a hearing would aid the Court's determination" of Plaintiff's motion to strike Mr. Hsiang's affidavit. Voter Verified, Inc. v. Premier Election Sols., Inc., No. 6:09-CV-1968, 2010 WL 1002648, at *4 (M.D. Fla. Mar. 18, 2010) (denying plaintiff's motion for oral argument); see LR 7.1(E), NDGa ("Motions will be decided by the court without oral hearing, unless a hearing is ordered by the court."); see also Scutieri v. Paige, 808 F.2d 785, 795 (11th Cir. 1987) ("[A] district court has discretion not to hear oral testimony on motions.").

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The movant[] can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof." Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281-82 (11th Cir. 1999). The moving party need not "support its motion with affidavits or other similar materials *negating* the opponent's claim." Celotex, 477 U.S. at 323. Once the moving party has met its initial burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham, 193 F.3d at 1282. The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

"If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted." Apcoa, Inc. v. Fid. Nat. Bank, 906 F.2d 610, 611 (11th Cir. 1990) (internal quotation marks omitted) (quoting Anderson, 477 U.S. at 250). The party

11

opposing summary judgment "must do more than simply show that there is some

metaphysical doubt as to the material facts . . . .  Where the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial."  Scott v. Harris, 550 U.S. 372, 380 (2007) (internal

quotation marks omitted) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 586-87 (1986)); cf. Miller v. Kenworth of Dothan, Inc.,

277 F.3d 1269, 1275 (11th Cir. 2002) (a party is entitled to summary judgment if

"the facts and inferences point overwhelmingly in favor of the moving party, such

that reasonable people could not arrive at a contrary verdict" (quoting

Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997) (internal

quotation marks omitted))).

    "At the summary judgment stage, facts must be viewed in the light most

favorable to the nonmoving party only if there is a 'genuine' dispute as to those

facts."  Scott, 550 U.S. at 380.  "When opposing parties tell two different stories,

one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of

ruling on a motion for summary judgment."  Id.  "[C]redibility determinations, the

weighing of evidence, and the drawing of inferences from the facts are the function

of the jury." <u>Graham</u>, 193 F.3d at 1282. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." <u>Id.</u>

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

<u>Celotex</u>, 477 U.S. at 322-23; <u>see</u> <u>Freeman v. JPMorgan Chase Bank N.A.</u>, ___ Fed. App'x ___, 2017 WL 128002, at *4 (11th Cir. Jan. 13, 2017) (same); <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1247 (11th Cir. 1999) ("If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted.").

B.    <u>Analysis</u>

1.    <u>Plaintiff's Untimely Response</u>

On May 1, 2017, Defendants filed their Motion for Summary Judgment and Statement of Undisputed Material Facts. Plaintiff did not file his response by May 22, 2017, in violation of the Local Rules, and, as a result, the motion is deemed unopposed. <u>See</u> LR 7.1(B), NDGa. On June 13, 2017, more than three weeks later, Plaintiff filed his Response to Defendants' Statement of Undisputed

Material Facts and Statement of Additional Facts [37] ("Response"). Plaintiff, who is represented by counsel, did not seek an extension of time in which to file his Response, did not offer any explanation for his untimely filing, and did not seek leave to file his Response outside of the time period established by the Local Rules. To date, Plaintiff has not filed a response brief.[4]

"Deadlines are not meant to be aspirational" and Plaintiff's "[c]ounsel must take responsibility for the obligations to which [they] committed and get the work done by the deadline." Young v. City of Palm Bay, Fla., 358 F.3d 859, 864 (11th Cir. 2004) (affirming the district court's refusal to consider plaintiff's untimely responses to defendants' summary judgment motions). "A district court must be able to exercise its managerial power to maintain control over its docket" and, absent good cause for an extension, the Court's deadlines must be enforced. Id. "[T]he Court must enforce its deadlines to ensure fairness to all sides" and to all litigants, including those who work hard—and make difficult choices—to meet the deadlines set by the Local Rules. City of Fort Lauderdale v. Scott, No. 10-CV-61122, 2012 WL 1535463, at *2 (S.D. Fla. Apr. 30, 2012). For these reasons,

---

[4]     On May 25, 2017, Plaintiff informed the Court that he intended to submit a "Motion to [sic] Leave to File a Response to Defendants' Motion for Summary Judgment Out of Time" in which he would "request that the Court consider Plaintiff's response." ([34] at 2). No such motion was ever filed.

a "district court's refusal to consider an untimely opposition to summary judgment motion is not an abuse of discretion." Mosley v. MeriStar Mgmt. Co., LLC, 137 F. App'x 248, 250 (11th Cir. 2005).

Plaintiff's plain and unexplained disregard of the Court's Local Rules is unacceptable, and the Court declines to consider his untimely Response and supporting materials. See id. (affirming the district court's refusal to consider plaintiff's untimely response to defendant's summary judgment motion, including because plaintiff "neither asked for an extension of time to file a response, nor explained why her opposition was tardy"); McDuffie v. Broward Cty., Florida, 654 F. App'x 408, 412 (11th Cir. 2016) (affirming the district court's refusal to consider plaintiff's response to defendant's summary judgment motion because the response was filed eleven days late "without leave of the court," plaintiff "never requested an extension of time before filing the late response," and plaintiff "did not assert that her late filing should be excused due to excusable neglect"); Young, 358 F.3d at 864 (affirming the district court's refusal to consider plaintiff's untimely responses to defendants' summary judgment motions) Martinez v. Palm Bay Police Dep't, No. 6:04-CV-1819, 2006 WL 1933812, at *1 (M.D. Fla. July 11, 2006) (striking plaintiff's response to defendants' motion for summary

judgment where the response was filed three days late); <u>United Nat.</u>
<u>Ins. Co. v. Owl's Nest of Pensacola Beach, Inc.</u>, No. 3:05-CV-374, 2006 WL
1653380, at *3 (N.D. Fla. June 8, 2006) (declining to consider plaintiff's response
to defendant's summary judgment motion because the response was filed three
days late "without [plaintiff] acknowledging the lateness of his filing or seeking
leave of court to file out of time").

Plaintiff's Response is untimely, and Defendants' Motion for Summary
Judgment is deemed unopposed. <u>See</u> LR 7.1(B), NDGa. Having reviewed
Defendants' citations to the record, the Court adopts the facts in Defendants'
Statement of Undisputed Material Facts [29.6] for which there is evidentiary
support. <u>See</u> <u>Hampton v. Atzert</u>, 590 F. App'x 942, 944 (11th Cir. 2014)
("[A] district court will accept each of the movant's facts admitted at summary
judgment unless the nonmovant directly refutes these facts with concise
responses."); <u>Reese v. Herbert</u>, 527 F.3d 1253, 1268 (11th Cir. 2008) (filing the
responsive materials required by Local Rule 56.1 is the "only permissible
way . . . to establish a genuine issue of material fact" in response to the moving
party's assertion of undisputed facts); <u>cf.</u> <u>id.</u> at 1269 (stating that, where the
non-movant fails to comply with Local Rule 56.1, the court still must "review the

movant's citations to the record to determine if there is, indeed, no genuine issue of material fact").[5]

### 2. Plaintiff's Claims against SLC

Plaintiff asserts claims against SLC for "negligence – premises liability" and wrongful death. Defendants argue these claims are barred by Georgia's Workers' Compensation Act ("WCA"). The WCA requires employers to "provide[] benefits to an employee injured in an accident arising out of and in the course of the employment." Dixie Roadbuilders, Inc. v. Sallet, 733 S.E.2d 511, 514 (Ga. Ct. App. 2012). "An injury or death arises out of employment when it is apparent to the rational mind, upon consideration of all the circumstances, that there is a causal connection between the conditions under which the work is required to be performed and the resulting injury." Id. "An injury or death arises in the course of

---

[5] On October 10, 2017, almost five months after his response to Defendants' summary judgment motion was due, Plaintiff filed his "Motion for Partial Summary Judgment" to address whether his claims are barred under Georgia's Workers' Compensation Act. This transparent attempt to respond to the issues raised in Defendants' summary judgment motion, to which Plaintiff did not file a timely response, will not be permitted. Plaintiff's Motion for Partial Summary Judgment and his Motion for Oral Argument on the Motion for Partial Summary Judgment are denied. See Enwonwu v. Fulton-Dekalb Hosp. Auth., 286 F. App'x 586, 595 (11th Cir. 2008) (per curiam) (affirming denial of motion for partial summary judgment, filed more than twenty days after the close of discovery, as untimely under the Local Rules); Dedge v. Kendrick, 849 F.2d 1398, 1398 (11th Cir. 1988) (per curiam) (affirming denial of motion for summary judgment, filed more than one month late, as untimely).

employment when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto." Id. "The legislature has expressly codified its intent that the Act be liberally construed to bring both employers and employees within the Act." Id. (citing O.C.G.A. § 34-9-23).

The WCA requires employers to provide compensation for covered injuries "without regard to issues of negligence or assumption of risk." Smith v. Gortman, 403 S.E.2d 41, 42 (Ga. 1991). The WCA thus "supplant[s] the common law with an absolute liability of an employer[] and fixed entitlements for an employee." Id. The WCA's provisions are, furthermore, "the exclusive remedy for the employee against the employer." Doss v. Food Lion, Inc., 477 S.E.2d 577, 578 (Ga. 1996).[6] "When an employee's injuries are compensable under the Act, the employee is absolutely barred from pursuing a common law tort action to recover for such injuries, even if they resulted from intentional misconduct on the part of the employer." Kellogg Co. v. Pinkston, 558 S.E.2d 423, 424 (Ga. Ct. App. 2001).

---

[6]     The WCA provides: "The rights and the remedies granted to an employee by this chapter shall exclude and be in place of all other rights and remedies of such employee, his or her personal representative, parents, dependents, or next of kin, and all other civil liabilities whatsoever at common law or otherwise, on account of such injury, loss of service, or death." O.C.G.A. § 34-9-11(a).

This bar against suit applies equally to the employee and his "personal representative, parents, dependents, or next of kin, at common law or otherwise." Smith, 403 S.E.2d at 42. "The exclusivity provision is the bedrock of the workers' compensation system. The legislature has determined that it is the quid pro quo for workers receiving a guarantee of prompt benefits for work-related injuries without regard to fault or common-law defenses and without the delay inherent in tort litigation." Doss, 477 S.E.2d at 578.

The WCA's exclusivity provision also limits an employee's remedies against his employer's alter ego. See Brown v. Advantage Eng'g, Inc., 732 F. Supp. 1163, 1166-67 (N.D. Ga. 1990) ("According to O.C.G.A. § 34–9–11, workers' compensation, when available, is an employee's exclusive remedy against his employer or its alter-ego."); Drury v. VPS Case Mgmt. Servs., Inc., 408 S.E.2d 809, 810 (Ga. Ct. App. 1991) ("[A]n employee who is eligible for workers' compensation benefits may not otherwise recover as against his employer *or his employer's alter ego* for his compensable on-the-job accident, but is limited to his workers' compensation remedy." (emphasis added)); see, e.g., Heaton v. Home Transp. Co., 659 F. Supp. 27, 33 (N.D. Ga. 1986) ("The undisputed facts establish that AAA and Home are indeed alter egos of each other, and therefore, . . . AAA [is entitled] to the benefit of Home's immunity from

suit under the Georgia workers' compensation law."); <u>Creeden v. Fuentes</u>,

673 S.E.2d 611, 612-614 (Ga. Ct. App. 2009) (finding that "Highland was

[plaintiff's] statutory employer . . . and, therefore, [Highland is] immune from tort

liability under OCGA § 34-9-11," and, "as the alter ego of Highland, Creeden is

also entitled to immunity under OCGA § 34-9-11"); <u>Betts v. Medcross Imaging</u>

<u>Ctr., Inc.</u>, 542 S.E.2d 611, 615 (Ga. Ct. App. 2000) ("Whatever breach of duty he

may have committed with respect to the operation of the Norcross clinic was

committed while acting as an 'alter ego' of the corporation.

Accordingly, . . . a separate action against him is precluded by OCGA

§ 34-9-11."); <u>Harvey v. Fine Prod. Co.</u>, 275 S.E.2d 732, 733 (Ga. Ct. App. 1980)

("If, indeed, Fine Products is the alter ego of Sophie Mae and shared the duties and

responsibilities of its subsidiary, . . . it is immune from suit in tort to the same

extent as Sophie Mae.").

    To establish that a corporate entity is an alter ego of its owners, "it is

necessary to show that the shareholders disregarded the corporate entity and made

it a mere instrumentality for the transaction of their own affairs; that there is such

unity of interest and ownership that the separate personalities of the corporation

and the owners no longer exist." <u>Baillie Lumber Co. v. Thompson</u>, 612 S.E.2d

296, 299 (Ga. 2005). The alter ego doctrine was applied in <u>Heaton</u>, where the

plaintiff was injured during his employment with Home Transportation Company, Inc. ("Home"). Heaton, 659 F. Supp. 27. Although plaintiff sought and received workers' compensation benefits from Home, he filed a personal injury action against AAA Truck Lease & Sales, Inc. ("AAA"), a Home subsidiary. The court held that plaintiff's action was barred by the WCA's exclusivity provision because AAA was an alter ego of plaintiff's employer, Home. The court based its conclusion on the following facts:

> AAA was a wholly owned subsidiary of Home. AAA was operated for the purpose of recruiting owner-operators for use by Home. AAA was under the exclusive control of Home. AAA and Home shared the same officers and the same directors. All management level positions for AAA were occupied by Home employees. A great majority of all managerial and administrative functions relative to the AAA operation were performed by Home personnel. All AAA personnel and payroll matters were handled by Home employees. All AAA corporate accounting functions were handled by Home employees. None of these administrative services provided by Home employees were charged back to AAA. The offices of AAA were located at and intermingled with that of Home. The two entities jointly filed a consolidated corporate tax return. In short, AAA was operated as a department of Home and was not treated as a separate corporate entity.

Heaton, 659 F. Supp. at 33 (citations omitted).

The Court finds, and the parties do not dispute, that Mrs. Mangham is eligible for workers' compensation benefits under the WCA because, having died "during her normal evening shift" at work, ([29.11] at 11), her death "ar[ose] out of

and in the course of [her] employment" with Starwood, <u>Sallet</u>, 733 S.E.2d at 514.

The WCA's exclusivity provision also bars Plaintiff, Mrs. Mangham's surviving

husband, from suing Starwood for wrongfully causing Mrs. Mangham's death.

The Court further concludes that SLC is immune from liability under the WCA

because, for the same reasons that AAA was an alter ego of Home in <u>Heaton</u>, the

Court finds that SLC is an alter ego of Starwood:

> [SLC] was a wholly owned subsidiary of [Starwood]. . . . [SLC] was under the exclusive control of [Starwood]. [SLC] and [Starwood] shared the same officers and the same directors.[7] All management level positions for [the Hotel] were occupied by [Starwood] employees. . . . [A]ll managerial and administrative functions relative to [SLC and the Hotel] were performed by [Starwood] personnel. All [SLC and Hotel] personnel and payroll matters were handled by [Starwood] employees. All [SLC and Hotel] corporate accounting functions were handled by [Starwood] employees.

<u>Heaton</u>, 659 F. Supp. at 33 (citations omitted). SLC also does not have offices

separate from Starwood offices, "[Starwood] can unilaterally make the decision to

sell the Hotel and fixtures at the Hotel," and Starwood receives the proceeds of any

sale of the Hotel's fixtures. (DSMF ¶¶ 11-13). "In short, [SLC] was operated as a

department of [Starwood] and was not treated as a separate corporate entity."

<u>Heaton</u>, 659 F. Supp. at 33.

---

[7] That is, all of SLC's officers and directors were employees of Starwood. (DSMF ¶ 7).

The facts in Heaton are strikingly similar to those here, and the Court reaches the same conclusion as the Heaton court: SLC is "entitle[d] . . . to the benefit of [Starwood's] immunity from suit under the Georgia workers' compensation law." Id. Defendants are entitled to summary judgment on Plaintiff's claims against SLC.

### 3. Plaintiff's Claims against Westin

Plaintiff asserts claims against Westin for "negligence – premises liability" and wrongful death.

> Under Georgia law, to recover for negligence, a plaintiff must show (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

Jones v. Amazing Prod., Inc., 231 F. Supp. 2d 1228, 1238 (N.D. Ga. 2002) (quoting Bradley Ctr., Inc. v. Wessner, 296 S.E.2d 693, 695 (Ga. 1982)).

"[T]o recover on a theory of premises liability, a plaintiff must show injury caused by a hazard on an owner or occupier of land's premises or approaches that the owner or occupier should have removed in the exercise of ordinary care for the safety of the invited public." Pinder v. H & H Food Servs., LLC, 756 S.E.2d 721, 724 (Ga. Ct. App. 2014). "[A] suit for wrongful death is derivative to the

decedent's right of action," and "[a] survivor cannot recover for the decedent's wrongful death if the decedent could not have recovered in his or her own right." Mowell v. Marks, 603 S.E.2d 702, 704 (Ga. Ct. App. 2004).

The undisputed evidence is that Westin has "nothing to do with the Hotel" in which Mrs. Mangham died, and that it "does not own, operate, maintain or otherwise control the Hotel or the fixtures therein," including the Hotel freezer that allegedly caused Mrs. Mangham's death. (DSMF ¶¶ 14-15). As a result, no reasonable jury could find Westin liable for negligence, premises liability, or wrongful death arising from the alleged malfunction of the Hotel freezer. Defendants are entitled to summary judgment on Plaintiff's claims against Westin, and Defendants' Motion for Summary Judgment is granted.[8, 9]

---

[8] Defendants also are entitled to summary judgment on Plaintiff's request for punitive damages because, "[u]nder Georgia law, the award of punitive damages, absent any finding of liability and actual damages, is improper." Green v. HSBC Mortg. Servs., No. 1:13-CV-02891-RWS, 2014 WL 221210, at *4 (N.D. Ga. Jan. 21, 2014).

[9] Plaintiff seeks to file, under seal, certain documents designated by Defendants as confidential pursuant to the Consent Confidentiality Order [35] entered in this case. All of the documents sought to be filed under seal are exhibits to Plaintiff's untimely Response. Because Plaintiff's Response is disregarded and has no bearing on the disposition of this case, the Court finds that the exhibits may remain under seal. Plaintiff's Motion to Seal is granted.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike the Affidavit of Michael Hsiang [31] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Oral Argument on its Motion to Strike the Affidavit of Michael Hsiang [34] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment [41] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Oral Argument on its Motion for Partial Summary Judgment [42] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [29] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Certain Documents Designated Confidential by Defendants Under Seal [39] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**SO ORDERED** this 11th day of October, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE